UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JORGE SANCHEZ, | ) | 3:22-CV-1087 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| OFFICER BELL, *et al.*, | ) | |
| *Defendants*. | ) | January 23, 2023 |

## INTIAL REVIEW ORDER

Plaintiff, Jorge Sanchez, a sentenced inmate currently incarcerated within the Connecticut Department of Correction ("DOC") at Cheshire Correctional Institution ("Cheshire"), brings this complaint *pro se* pursuant to 42 U.S.C. § 1983 ("Section 1983"), Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, and the Rehabilitation Act ("RA"), 29 U.S.C. § 701. Compl., ECF No. 1; Am. Compl., ECF No. 16. He names six DOC staff members who worked at Cheshire at the time relevant to this action: Officer Bell, Lieutenant Callender, ADA/Unit Manager Manik, Warden Reis, Deputy Warden Nunez, and Deputy Warden Pierce.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. §1915A. Based on this initial review, the Court orders as follows.

I. **FACTUAL BACKGROUND**

While the Court does not set forth all of the facts alleged in Plaintiff's Amended Complaint (ECF No. 16), it summarizes his basic factual allegations here to give context to its rulings below.

Plaintiff alleges that he is a paraplegic with a spinal cord injury who can hardly walk. It appears that Plaintiff works in meal service at Cheshire, and was previously assigned to pass out milk because it was a job during which he could sit. On April 19, 2022, Plaintiff overheard Officer Bell saying that she did not want Plaintiff passing out milk. On April 22, 2022, Officer Bell told Plaintiff that she was rotating workers. Plaintiff told Officer Bell he had a disability and that he had been told to sit there and pass out the milk by "A.D.A. Garcia." Officer Bell then began yelling at Plaintiff, telling him to "rotate or lock up." Plaintiff asked Officer Bell to call for a wheelchair in order to return to his cell to lock up, because his spine starts to spasm when he gets nervous. Officer Bell called Lieutenant Callender, who called Medical Nurse Stacy to bring a wheelchair. Lieutenant Callendar then ordered staff to place Plaintiff in the wheelchair and to take him to the solitary housing unit. Plaintiff underwent a hunger strike for eight days while in solitary housing. Plaintiff stayed in the solitary unit until May 2, 2022. Neither A.D.A. Unit Manager Manick nor any of the wardens, Defendants Reis, Nunez, and Pierce, visited Plaintiff in solitary to explain why he was placed there. Plaintiff alleges that he has exhausted his administrative remedies pertaining to this incident. He sues each Defendant in their individual and official capacities for money damages.

II. **CLAIMS UNDER THE AMERICANS WITH DISABILITIES ACT AND REHABILITATION ACT**

Plaintiff attempts to assert claims under the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") for failure to accommodate. In order to successfully plead a claim under Title II of the ADA or § 504 of the RA Plaintiff must allege that (1) he is a qualified individual

with a disability; (2) that the defendants are subject to the ADA and RA; and (3) that Plaintiff was denied the opportunity to participate in or benefit from Defendants' services, programs, or activities, or was otherwise discriminated against by Defendants, because of Plaintiff's disabilities. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

"Neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." *Garcia v. S.U.N.Y. Health Scis. Ctr. Of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). As to official capacity claims, the Court is aware that it is presently unsettled in the Second Circuit whether a plaintiff may assert a Title II ADA damages claim against a state actor in his or her official capacity, and, if so, under what circumstances such a claim can be maintained. *See Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 193–95 (2d Cir. 2015) (recognizing uncertainty, after the decision in *United States v. Georgia*, 546 U.S. 151 (2006), about the extent to which Congress validly abrogated state sovereign immunity under Title II and about the continuing validity of the Second Circuit's decision in *Garcia*, 280 F.3d at 111–12, on this issue).

**Defendant Bell.** Here, for purposes of initial review, Plaintiff's complaint adequately alleges each of the requisite elements of a claim under the ADA and RA against Defendant Bell. Due to the uncertainty concerning whether damages actions under the ADA and RA are cognizable against defendants in their official capacity, however, the Court believes that any decision regarding whether sovereign immunity bars Plaintiff's ADA and RA claim against Defendant Bell in her official capacity should be determined after operation of the adversarial process. Thus, if Defendants believe such claims to be prohibited, they are encouraged to file a motion to dismiss presenting this argument. Plaintiff's individual capacity claim against Defendant Bell is dismissed.

**Defendants Manik, Reis, Nunez, and Pierce.** Plaintiff's individual capacity claims under the ADA and RA against these Defendants are dismissed. As to his official capacity claims, Plaintiff alleges only that Defendants Manick, Reis, Nunez, and Pierce failed to visit him while he was in solitary housing to explain to him why he was there. These allegations are insufficient to allow claims against these Defendants to proceed under the ADA or RA.

**Defendant Callender.** Plaintiff's claims under the ADA and RA against Defendant Callender in her official capacity appear based on a theory of retaliation. In order to allege a claim for retaliation under either statute, a plaintiff must allege "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002). The allegations in Plaintiff's complaint adequately allege each of these elements against Defendant Callender, for purposes of initial review. The Court is aware, however, that it is also unclear in the Second Circuit whether a plaintiff may maintain an action against a state actor, in either their individual or official capacity, for retaliation under the ADA or the RA. As this area of law appears unsettled, the Court believes adjudication of this issue is also best reserved until after the adversarial process has begun. If Defendants believe Plaintiff's claim against Defendant Callender is legally insufficient, they are invited to present any and all arguments to that effect in a motion to dismiss.

### III. CONSTITUTIONAL CLAIMS BROUGHT UNDER 42 U.S.C. § 1983

#### A. Eighth Amendment Claims

Plaintiff's complaint also requests relief for violations of his rights under the Eighth Amendment of the United States Constitution, through a claim under 42 U.S.C. § 1983.

The Court construes Plaintiff's amended complaint as asserting an Eighth Amendment claim against Defendant Bell for deliberate indifference to his need for a wheelchair. In order to show a violation of his Eighth Amendment rights for deliberate indifference to health or safety, Plaintiff must allege (1) that he was incarcerated under "conditions posing a substantial risk of serious harm" and (2) the prison official putting him in those conditions was deliberately indifferent to his health or safety. *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020). In order to meet this second prong, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* The amended complaint adequately states a claim, for purposes of initial review, against Defendant Bell for deliberate indifference to Plaintiff's serious need for a wheelchair in order to return to his cell. Specifically, by refusing to allow Plaintiff the use of a wheelchair, Defendant Bell put Plaintiff at risk of serious harm and was deliberately indifferent to that risk. The Eighth Amendment claim for deliberate indifference to health or safety may proceed against Defendant Bell in her individual capacity.

The Court also construes Plaintiff's amended complaint as asserting an Eighth Amendment claim against Defendant Callender for excessive force, in connection with Callender's ordering that Plaintiff be taken to solitary housing after he requested the wheelchair. In order to adequately allege this claim, Plaintiff must show that the force employed by a defendant was not "applied in a good-faith effort to maintain or restore discipline" but was done "maliciously or sadistically to cause harm," and that the harm done was objectively serious enough to violate Plaintiff's constitutional right to be free from such harm. *See Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000). The amended complaint adequately states a claim, for purposes of initial review, against Defendant Callender in her individual capacity for excessive force. It plausibly alleges that Callender's

5

ordering Plaintiff be put in solitary confinement after failing to return to his cell when asked was objectively unreasonable and done in order to maliciously or sadistically cause harm. The Eighth Amendment claim for excessive force may proceed against Defendant Callender in her individual capacity.

Plaintiff has not set forth sufficient facts concerning the personal involvement of Defendants Manik, Reis, Nunez, or Pierce in the events underlying the alleged Eighth Amendment violation. Thus, these claims shall not proceed as to them. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983").

### B.   First Amendment Retaliation Claim

The Court construes Plaintiff's amended complaint as asserting that Defendants Bell and Callender retaliated against him for requesting a wheelchair.

To plead a First Amendment retaliation claim, an inmate must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against [him or her], and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (citation omitted).

The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citation omitted). Cases asserting retaliation claims for inmate speech generally concern complaints made to prison officials regarding the conduct of correctional officers or prison conditions. *See Milner v. Lamont*, No. 3:20-cv-1245, 2022 WL 2110971, at *8

(D Conn. June 9, 2022). The Second Circuit has yet to articulate a bright line rule regarding constitutionally protected oral speech by an inmate. *Cosby v. McDonald*, No. 3:20-cv-432, 2020 WL 5026550, at *6 (D. Conn. Aug. 25, 2020).

At least one district court in Connecticut has found that a request for medical attention is protected speech under the First Amendment. *Milner*, 2022 WL 2110971, at *8. Plaintiff's request for a wheelchair is analogous to a request for medical attention. For purposes of initial review, the Court finds that Plaintiff has adequately alleged protected speech, in the form of his request for a wheelchair. Plaintiff also sufficiently alleges that Defendants Bell and Callender took adverse action against him because of his request for a wheelchair. Therefore, Plaintiff's First Amendment claim against Defendants Bell and Callender in their individual capacities will proceed past initial review. As with the issues identified above, however, this issue could benefit from development through the adversarial process, and Defendants may file a motion to dismiss if they believe the allegations fail to state a claim to relief.[1]

### C. Official Capacity Claims

Finally, it is well established that a plaintiff may not maintain a claim against a state defendant in his or her official capacity for monetary damages, as such a claim is barred by the Eleventh Amendment of the United States Constitution. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Thus, Plaintiff's Eighth and First Amendment claims against all Defendants, to the extent they seek monetary damages from Defendants in their official capacities, are hereby dismissed.

## IV. CONCLUSION

The Court enters the following orders:

---

[1] Plaintiff's allegations that his radio boom box was broken by unspecified individuals does not rise to the level of an adequately pleaded constitutional violation that can survive initial review.

The case can proceed on Plaintiff's claims for:

1. ADA and RA violations against Defendants Bell and Callender in their official capacity for damages;

2. Eighth Amendment excessive force claim against Defendant Callender in her individual capacity for damages;

3. Eighth Amendment deliberate indifference claim against Defendant Bell in her individual capacity for damages; and

4. First Amendment retaliation claims against Defendants Bell and Callender in their individual capacities for damages.

All other claims are dismissed without prejudice. The Court dismisses Defendants Manik, Reis, Nunez, and Pierce from this action.

Plaintiff has two options as to how to proceed in response to this Initial Review Order:

(1) If Plaintiff wishes to proceed on the claims set forth in items one through four immediately above against Defendants Bell and Callender **only**, he may do so without further delay. If Plaintiff selects this option, he shall file a notice on the docket on or before February 22, 2023, informing the Court that he elects to proceed with service as to the claims set forth in this paragraph. The Court will then begin the effort to serve process on Defendants Bell and Callender in their official capacities.

(2) Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his amended complaint that have been dismissed, in order to attempt to state a viable claim, he may file a second amended complaint by February 22, 2023. A Second Amended Complaint, if filed, will completely replace the Complaint, and

the Court will not consider any allegations made in the original Complaint in evaluating any Second Amended Complaint. The Court will review any Second Amended Complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Plaintiff elects to file a Second Amended Complaint, the amended complaint this IRO addresses will **not** proceed to service of process on any defendant.

If the Court receives no response from Plaintiff by February 22, 2023, the Court will presume that Plaintiff wishes to proceed on the amended complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Changes of Address.** If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that he **MUST** notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendants or counsel for Defendants of his new address.

**SO ORDERED** at Hartford, Connecticut, this 23rd day of January, 2023.

    /s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE