## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JORGE SANCHEZ | : | CIVIL NO. 3:22-CV-1087 (SVN) |
| *Plaintiff,* | | |
| v. | : | |
| BELL, ET AL | : | JULY 13, 2023 |
| *Defendants.* | | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF<br>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

## I.    <u>INTRODUCTION</u>

Jorge Sanchez, an inmate at Cheshire Correctional Institution ("the Plaintiff"), filed this action alleging that Lieutenant Shawde Callender and Correctional Officer Tiffany Bell, two Department of Correction ("DOC") employees ("the Defendants"), discriminated against him in violation of Americans with Disabilities Act ("ADA") and Rehabilitation Act, and also violated his First and Eighth Amendment civil rights by using excessive force against him (Callender), being deliberately indifferent to his health and safety (Bell), and retaliating against him (Bell and Callender).  More specifically, he claims that he is a paraplegic who was denied access to a wheelchair, which he needed to return to his cell when directed to do so by Defendant Bell on April 22, 2022.  He further complains that he was then wrongly cited with a disciplinary ticket for flagrant disobedience by Bell in retaliation for asking for the wheelchair and was also wrongly sent to, and held in segregation for several days by Defendant Callender, as punishment for

requesting the wheelchair. The Defendants move for summary judgment on all counts against them. The Plaintiff – who is not a paraplegic and does not use a wheelchair – failed to exhaust administrative remedies that were available to him, before filing his federal lawsuit, as required by the Prison Litigation Reform Act (hereinafter "PLRA").

## II.   <u>BACKGROUND</u>

The Plaintiff has been incarcerated with the Department of Correction (*hereinafter,* "DOC") as a sentenced prisoners since 1996. <u>56(a)(1) Statement</u>, ¶ 1. Due to an old gunshot injury, the Plaintiff suffered a spinal cord injury that causes him to experience a gait abnormality. <u>Id</u>., ¶ 3. The gait abnormality impacts the Plaintiff's balance and walking speed. <u>Id</u>., ¶ 4. To assist the Plaintiff with his gait abnormality, the health services department issued the Plaintiff a quad-cane. <u>Id</u>., ¶ 5. The cane provides the Plaintiff stability when walking. <u>Id</u>   The Plaintiff also occasionally experiences back spasms and takes oral medication to treat that condition. <u>Id</u>., ¶ 6. Despite the Plaintiff's gait abnormality and occasional back spasms, he is ambulatory. <u>Id</u>., ¶ 8. Additionally, his back spasms are not treated with a wheelchair. <u>Id</u>., ¶ 7. He has never requested a wheelchair as a reasonable accommodation by filing a CN 101902 form, as required by DOC Administrative Directive 10.19, nor has he ever been issued a wheelchair (from the health services department or through the ADA coordinator) on either a full-time or part-time basis. <u>Id</u>., ¶¶ 28-30, 38, 42-43, 46). There is no reasonable accommodation plan in place for the Plaintiff, nor was there one in 2022. <u>Id</u>., ¶¶ 46-47.

In April of 2022, the Plaintiff was a tierman in his housing unit at North Block 1. 56(a)(1) Statement, ¶ 13. As a tierman, it was his job to pass out milk at designated mealtimes. Id. Shortly after being released from his cell on April 22, 2022, and walking to the location where milk is distributed from, the Plaintiff was directed by the Defendant, Correctional Officer Tiffany Bell, to return to his cell and lock-up. Id., ¶ 15. Defendant Bell, who felt there were too many workers for the amount of work to be done, wished to rotate the Plaintiff and other inmates to reduce the number of workers in the common area and advised the Plaintiff of this fact when directing him back to his cell. (Exhibit I, ¶¶ 6-8). The Plaintiff refused, however, to walk back to his cell. 56(a)(1) Statement, ¶ 16. Instead, he argued with Defendant Bell and remained in the day room. Ultimately, Defendant Bell called for back-up and Defendant Lieutenant Shawde Callender, responded. Id., ¶¶ 17-18.

When Defendant Callender arrived, the Plaintiff was seated in a large plastic chair. 56(a)(1) Statement, ¶ 19. Defendant Bell explained that she had given the Plaintiff a direct order to return to his cell but he refused to comply. Id., ¶ 20. When Defendant Callender spoke with the Plaintiff, he insisted that he was not being disobedient but needed a wheelchair and demanded one be brought to him. Id., ¶ 21. Defendant Callender ultimately called medical to respond to North Block 1 with a wheelchair for the Plaintiff. Id., ¶ 22. A wheelchair was brought for him at which time he was physically lifted out of the seat he was sitting in and placed into the wheelchair. (Exhibit I, ¶ 13); (Exhibit J, ¶ 11); (ECF 16, ¶¶ 6-7). Because Defendant Bell was going to be issuing the Plaintiff a ticket for flagrant disobedience,

Defendant Callender ordered the Plaintiff to be taken to the restricted housing unit ("RHU"). (Exhibit J, ¶ 12). He was transported there by wheelchair and then given his cane to retain in his cell with him. (Exhibit J, ¶ 17). After his stay in RHU concluded, the Plaintiff returned to his cell in North Block 1. (Exhibit G, ¶ 6). Upon his return to North Block 1, cell 111, the Plaintiff did not apply for a wheelchair accommodation by filing a CN 101902, nor was he issued a wheelchair on a full or part-time basis by the health services department or through his ADA coordinator. 56(a)(1) Statement, ¶¶ 10, 43, 47, 49.

The Plaintiff did, however, begin filing grievances against CO Bell and Lieutenant Callender in connection with the events of April 22, 2022 (the "wheelchair incident"), following his stay in RHU. 56(a)(1) Statement, ¶ 68. On May 4, 2022, the Plaintiff filed a level 1 grievance (#125-22-367) in which he alleged that CO Bell discriminated against him by yelling at him to lock-up and not providing him with a wheelchair in response to his multiple requests. Id., ¶ 70. This grievance was rejected on May 16th for failure to follow administrative procedures and first pursue an informal resolution as required by Administrative Directive ("AD") 9.6. Id., ¶ 70b. It was also denied for not being simply stated and coherent as required by AD 9.6. Id., ¶ 70c. On May 13, 2022, he filed a level 1 grievance (#125-22-377) in which he alleged that Cheshire administration had not responded to his request for informal resolution in connection with his allegations against Bell and Callender and their conduct during the wheelchair incident. Id., ¶ 71. That grievance was rejected on June 1, 2022, for not being stated simply and coherently

as required by AD 9.6.  Id., ¶¶ 71a, 71b.

The Plaintiff filed another level 1 grievance (#125-22-378) on May 16, 2022 alleging that he wrote to all three Cheshire wardens about Lieutenant Callender abusing her authority in connection with the wheelchair incident, but no one ever responded and he wanted to press departmental charges.  56(a)(1) Statement, ¶ 72. This grievance was denied on June 14th.  Id., ¶ 72a.  The Plaintiff was advised that the CN 9601 that he had attached to his grievance has never been received by anyone in administration.  He was then instructed to properly address his forms and to deposit them into the appropriate collection boxes.  Id., ¶¶ 72b.  He was given five days to appeal the decision.  Id., ¶ 72c.  His appeal was rejected on July 22nd but he was given five additional days to file a new compliant level 1 grievance.  Id., ¶¶ 72d, 72e.

On August 10, 2022, the Plaintiff filed his replacement grievance (#125-23-053) alleging again that he had properly attempted an informal resolution of his claims against Bell and Callender in connection with the wheelchair incident, by reaching out to all three Cheshire wardens but none answered his CN 9601 request and he still wanted to file departmental charges for violation of his state and federal rights.  56(a)(1) Statement, ¶ 73.  Because the Plaintiff did not rectify the procedural deficiencies in this level 1 grievance and instead relied upon the same defective paperwork that he previously submitted, this grievance too was rejected on August 24, 2022.  Id., ¶¶ 73a, 73b.

On August 29, 2022, the Plaintiff filed a federal lawsuit against the

Defendants which he then amended on October 24, 2022. <u>56(a)(1) Statement</u>, ¶ 74; (ECF 1, & 16).

## III.  <u>**SUMMARY JUDGMENT STANDARD**</u>

Federal Rule of-Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any fact and that the party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Szekeres v. Schaeffer*, 304 F. Supp. 2d 296, 304 (D. Conn. 2004). A "genuine issue" sufficient to preclude summary judgment is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. *Keystone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1449 (Fed. Cir. 1993). A fact is "material" for the purposes of summary judgment only if its resolution will affect the outcome of the lawsuit. *United Steelworkers v. United Eng'g*, 839 F. Supp. 1279, 1282 (N.D. Ohio 1993), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). Otherwise, the mere existence of some alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson*, 477 U.S. at 247-48; *Rosa v. Gaynor*, 784 F. Supp. 1, 3 (D. Conn. 1989).

The party seeking summary judgment always has the initial responsibility of informing the Court of the basis for its motion by identifying the portions of the pleadings, affidavits, or other documentary evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

317, 323-24 (1986). The moving party may satisfy this burden by demonstrating the absence of evidence supporting the nonmoving party's case. *See Pepsi Co., Inc. v. Coca-Cola Co.,* 315 F.3d 101, 105 (2d Cir. 2002) (*per curiam*). The court construes the facts in the light most favorable to the nonmoving party's case. See *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir.), *cert. denied*, 549 U.S 953 (2006).

When the moving party meets its burden and demonstrates the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to affirmatively set forth facts showing that there is indeed a genuine issue for trial. *Rule 56(e), Fed.R.Civ.P.* The nonmoving party cannot, however, oppose a properly made motion by reference only to its own pleadings. *Celotex Corp.*, 477 U.S. at 323-24. To defeat a motion for summary judgment, the non-moving party may not merely rely upon unsupported allegations made in their complaint, nor rely on "mere speculation or conjecture" to overcome a motion for summary judgment. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986), *cert. denied*, 480 U.S. 932 (1987). The nonmoving party must, by affidavit or otherwise, set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. If the nonmoving party does not respond, the court may accept as true the moving party's factual statements. (D. Conn. L. Civ. R. 56(a)(1)).

## IV.     ARGUMENT: THE PLAINTIFF FAILED TO EXHAUST ALL OF HIS CLAIMS

The Defendants are entitled to summary judgment on all claims against them in both their individual and official capacities, because the Plaintiff failed to comply

with the mandates of the Prison Litigation Reform Act ("PLRA) and exhaust all of the administrative remedies that were available to him before filing the instant action.

**A.   The Prison Litigation Reform Act ("PLRA") Requires Exhaustion of Administrative Remedies**

The PLRA requires prisoners to exhaust administrative remedies before filing a federal lawsuit related to prison conditions. 42 U.S.C. § 1997e(a). "The PLRA's exhaustion requirement applies to all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of whether the inmate may obtain the specific relief he desires through the administrative process. *See Booth v. Churner*, 532 U.S. 731, 738 (2001). The PLRA specifically provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion must precede commencement of suit. Id. The language of the statue is mandatory. *Ross v. Blake*, 578 U.S. 632 (2016).

Moreover, the PLRA requires "proper exhaustion," which includes complying with all "procedural rules," including filing deadlines, as defined by the particular prison grievance system. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Informal efforts to put prison officials on notice of inmate concerns, such as inmate requests or letters, do not satisfy the exhaustion requirement. *Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007). Failing to take all procedural steps, or taking them out of order will also fail to satisfy the exhaustion requirement. *See, e.g.,* N*eal v. Goord,* 267 F.3d

116, 122 (2d Cir. 2001) ("[G]rievances must now be fully pursued prior to filing a complaint in federal court").  In other words, "untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirements." *Ruggiero v. Cnty of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (quoting *Woodford*, 548 U.S. at 83-84).  Furthermore, the inmate is required to exhaust his administrative remedies *for each claim* he has asserted in federal court.  *Porter*, 534 U.S. at 524, 532**.**

An inmate may be excused from the exhaustion requirement only if administrative remedies were not in fact available.  The Supreme Court has identified three circumstances in which an administrative remedy is not available to an inmate: (1) "the administrative remedy may operate as a 'dead end,' such as where the office to which inmates are directed to submit all grievances disclaims the ability to consider them . . . [(2)] the procedures may be so confusing that no ordinary prisoner could be expected to 'discern or navigate' the requirements . . . [a]nd [(3)] prison officials may 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'"  *Shehan v. Erfe,* No. 3:15-CV-1315 (MPS), 2017 WL 53691, at * 6 (D. Conn. Jan. 4, 2017) (quoting *Ross,* 578 U.S. at 643-44 ).

Failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) is an affirmative defense. *See Jones v. Bock*, 549 U.S. 199, 216 (2007).  Defendants have the initial burden of proving that a plaintiff has not exhausted claims prior to filing the action.  *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015)

("Because failure to exhaust is an affirmative defense, defendants bear the initial burden of establishing ... that a grievance process exists and applies to the underlying dispute") (internal citations omitted)).  An inmate's failure to exhaust administrative remedies before commencing suit is normally a question to be raised by way of motion for summary judgment. *See McCoy v. Goord*, 255 F. Supp. 2d 233, 251 (S.D.N.Y. Mar. 25, 2003).  *See also Torrence v. Pesanti*, 239 F. Supp. 2d 230, 232 (D. Conn. Jan. 10, 2003).

**B.**    **Plaintiff Has Not Exhausted His Administrative Remedies In Connection With His ADA and Rehabilitation Act Claims Against Defendants Bell and Callender**

In his amended complaint, the Plaintiff asserts that Defendants Bell and Callender, in their official capacities, violated his rights under the Americans with Disabilities Act ("ADA") and Rehabilitation Act on April 22, 2022, by refusing to provide him – a "paraplegic" inmate who "can't hardly walk" – with a wheelchair so that he could return to his cell from his workstation and lock-up when told to do so, and by retaliating against him for demanding the wheelchair in the first place by placing him in RHU.  (ECF 16, ¶¶ 3-4); *Initial Review Order*, ¶¶ 2-4 (ECF 18). Because the Plaintiff failed to exhaust all available prison administrative remedies in connection with these two claims under the ADA and Rehabilitation Act, though, summary judgement in the Defendants' favor is appropriate.

### 1.    Exhaustion of ADA and Rehabilitation Act Claims

The PLRA exhaustion provision, § 1997e(a), states:

> ***No action*** shall be ***brought*** with respect to prison conditions ***under*** section 1983 of this title, or ***any*** other

> **Federal law**, by a prisoner confined in any jail, prison, or other correctional facility **until** such administrative **remedies** as are available are **exhausted**.

42 U.S.C. § 1997e(a) (emphasis added). The Americans with Disabilities Act ("ADA") is a federal statute codified at 42 USC § 12101 et seq. The Rehabilitation Act is also a federal statute codified at 29 USC § 794 et seq. Both, broadly speaking, protect individuals from discrimination based upon actual or perceived disabilities. [1] Because the ADA and Rehabilitation Act are both federal laws, district courts in the Second Circuit have concluded that the plain language of the PLRA requires that prisoners bringing any actions challenging prison conditions under these statutes, must first exhaust available administrative remedies. *Carleton v. Annucci*, No. 9:17-CV-0245 (MAD/TWD), 2018 U.S. Dist. LEXIS 199594, at *19-20 (N.D.N.Y. Nov. 21,

---

[1] The ADA was enacted to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1) (2000). Title II of the ADA proscribes discrimination against disabled individuals in public accommodations. Title II requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act requires that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). "[A]lthough there are subtle differences between these disability acts, the standards adopted by Title II of the ADA for State and local government services are generally the same as those required under section 504 of federally assisted programs and activities." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003). When analyzing an ADA or Rehabilitation Act claim, the court asks whether a plaintiff with disabilities "'as a practical matter' was denied 'meaningful access' to services, programs or activities to which he or she was 'legally entitled.'" *Wright v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 831 F.3d 64, 72 (2d Cir. 2016) (quoting *Henrietta D.*, 331 F.3d at 273).

2018) ("Claims under the ADA and Rehabilitation Act are subject to the PLRA's exhaustion requirements.") (collecting cases); *Colón v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 2017 U.S. Dist. LEXIS 151035, at *13, n.4 (S.D.N.Y. Sept. 15, 2017) ("Considering the plain language of the PLRA, district courts in this circuit have concluded that [t]he ADA falls within the rubric of any other federal law." (internal quotation marks omitted.) (collecting cases)); *Carlson v. Parry*, 06-cv-6621P, 2012 U.S. Dist. LEXIS 44292, at *38-40 (W.D.N.Y Mar. 29, 2012) (summary judgment granted for failure to exhaust where plaintiff's ADA and Rehabilitation Act claims based on requests for reasonable accommodations that were never made administratively); *see also O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1061 (9th Cir. 2007) (holding that "the plain language of § 1997e(a) and relevant Supreme Court authority require prisoners bringing ADA and Rehabilitation Act claims to exhaust those claims through available administrative remedies before filing suit"); *Jones v. Smith*, 266 F.3d 399, 400 (6th Cir. 2001) (affirming the dismissal of a prisoner complaint brought under the ADA for failure to exhaust)

In Connecticut prisons, there are two Department of Correction ("DOC") standards authorizing the use of wheelchairs by inmates. <u>56(a)(1) Statement</u>, ¶¶ 40-41. Wheelchairs are secured for, and provided to, inmates on a full-time basis by the health services department, when the inmates in question are not ambulatory and require a wheelchair for that reason. <u>Id</u>., ¶ 40. Wheelchairs may also be used periodically by inmates, who although generally ambulatory, require the periodic assistance of a wheelchair, such as when the inmate is unable to safely or effectively

ambulate longer distances by himself or herself.  Id., ¶ 41.  If an inmate who is otherwise ambulatory believes he or she needs the periodic assistance of a wheelchair, he or she must follow the DOC process for requesting a reasonable accommodation.  Id., ¶¶ 39, 42.  This process is outlined Administrative Directive 10.19, titled *Americans with Disabilities Act.*  Id., ¶¶ 27-30.

Under AD 10.19, the inmate seeking a reasonable accommodation must initiate the process by first filing a CN 101902 form with his or her local unit ADA coordinator.  56(a)(1) Statement, ¶ 30.  When the ADA coordinator receives the CN 101902, the coordinator is responsible for recording the request in the statewide reasonable accommodation request log.  Id., ¶¶ 31-32.  The coordinator is also responsible for reaching out to the health services department to review, assess and verify the asserted impairment.  Id., ¶ 34.  If an asserted impairment is verified by the health services department, the coordinator, is tasked with reviewing the potential impact on safety and security of the inmate's request.  Id., ¶ 35.  If an accommodation is approved, the coordinator is then responsible for creating and documenting the accommodation plan and making it available to unit and program staff.  Id., ¶ 14.  A copy of the plan is also retained in section 6 of the inmate's master file.  (Exhibit H, ¶ 13).

If, for whatever reason, a reasonable accommodation request is denied, the ADA coordinator must notify the inmate in writing and advise his or her of the right to appeal the decision under Administrative Directive 9.6.  56(a)(1) Statement, ¶ 37.  If the inmate wishes to appeal the denial of the requested reasonable

accommodation, he or she must follow those procedures outlined in subsection 7 of AD 9.6. <u>Id</u>., ¶¶ 37-38. These procedures are mandatory for inmates who wish to assert a qualifying disability and seek a reasonable accommodation in connection therewith. <u>Id</u>., ¶ 39. To ensure that inmates have notice of these procedures, they are posted in all facility units along with a hotline number that can be called to report problems. <u>Id</u>., ¶ 17.

**2.**     <u>**The Plaintiff Never Requested A Wheelchair Accommodation and Therefore Failed to Exhaust his ADA and Rehabilitation Act Claims**</u>

Contrary to the Plaintiff's assertions in his complaint, he is not a paraplegic who can hardly walk and who was unconstitutionally denied access to a wheelchair on April 22, 2022. The Plaintiff is an ambulatory inmate with a gait abnormality who uses a quad cane, given to him by health services, for assistance with stability. <u>56(a)(1) Statement</u>, ¶¶ 3, 5, 8. He does not use a wheelchair today, and he did not use one prior to April 22, 2022. <u>Id</u>., ¶¶ 7, 9-10, 48-49. More importantly, though, DOC records since, at least, November of 2016 show that the Plaintiff did not submit a CN 101902 request for a wheelchair accommodation on either a full-time or periodic use basis, as is required of any inmate seeking to assert a qualifying disability and a reasonable accommodation in connection therewith. <u>Id</u>., ¶¶ 39, 42-43. Because the Plaintiff has not requested a wheelchair accommodation, he has never been granted or denied one. In short, the Plaintiff has not even initiated the use of administrative remedies in connection with a reasonable accommodation request, let alone exhausted them. His failure to initiate the reasonable

14

accommodation request process under AD 10.19. is fatal to his ADA and Rehabilitation Act claims. *Nickelson v. Annucci*, No. 9:15-CV-00227 (GTS/TWD), 2018 U.S. Dist. LEXIS 199593, at *22-29 (N.D.N.Y. Nov. 21, 2018); *adopting magistrate's decision*, 9:15-cv-0227 (GTS/TWD), 2019 U.S. Dist. LEXIS 15382 (N.D.N.Y Jan. 31, 2019). (where plaintiff's failure to exhaust ADA claim was incurable in time frame, summary judgment and dismissal with prejudice granted)

The U.S. Supreme Court has made clear that proper exhaustion as required by the PLRA "means *using all steps* that the agency holds out, and doing so properly so that the agency addresses the issues on the merits." (Emphasis added.) *Woodford,* 548 U.S. at 90. Importantly, the Court has further clarified, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. Directives 10.19 and 9.6, are the prison requirements that define the boundaries of exhaustion in Connecticut. Both directives make clear that compliance with each is mandatory, not optional. The two directives set forth a clear multistep process whereby an inmate with a physical or mental disability may request a reasonable accommodation. The Plaintiff chose not to avail himself of these administrative remedies. Thus, having failed to seek any sort of wheelchair accommodation prior to or subsequent to April 22, 2022, the Plaintiff has failed to exhaust his administrative remedies in connection with his federal ADA and Rehabilitation Act claims.

C.    **Plaintiff Has Not Exhausted His Administrative Remedies In Connection With His 1ST Amendment Retaliation Claims Against Defendants Bell and Callender; his 8th Amendment Claim of Deliberate Indifference to Health and Safety Against**

**Defendant Bell; or his 8ᵗʰ Amendment Excessive Force Claim Against Defendant Callender**

The Plaintiff also alleges in his amended complaint that Defendants Bell and Callender violated his first and eight amendment rights by: (1) retaliating against him for requesting a wheelchair (Bell & Callender); (2) by using excessive force against him by placing him in RHU in response to his request for a wheelchair (Callender); and (3) being deliberately indifferent to his health and safety by failing to actually provide him with the requested wheelchair (Bell). All of these claims must be dismissed as well because the Plaintiff failed to exhaust his administration remedies in connection with all of them.

**1.     DOC's Administrative Remedies & Exhaustion of Custody Claims**

There are special procedures that must be used when, as in this case, an inmate seeks to challenge staff conduct. Connecticut inmates who seek administrative recourse following a custody incident which they believe was unfairly or improperly handled, may follow the steps outlined in DOC Administrative Directive ("AD") 9.6 to seek redress. By their terms these procedures are a mandatory prerequisite to securing a resolution within any DOC facility. 56(a)(1) Statement, ¶¶ 54-55. Pursuant to the PLRA they are a mandatory prerequisite to filing a federal lawsuit. *Jones*, 549 U.S. at 218. Under the version of AD 9.6 that was in effect on April 22, 2022, an aggrieved inmate must initiate the resolution process first by seeking an informal resolution verbally with the appropriate staff member or by moving directly to the next step of writing to the appropriate staff

member, using Inmate Request Form 9601. <u>56(a)(1) Statement</u>, ¶ 56. Within the CN 9601 form, the inmate must clearly state his or her problem and requested remedy, include the date and time that the informal verbal attempt at resolution occurred and be free from vulgar or obscene language. (Exhibit A, § 9.6(6)(a)(i)(4)). The form must be addressed to the appropriate staff member and be placed in the appropriate collection box. <u>56(a)(1) Statement</u>, ¶ 57.. A response to the inmate's informal request must then be made within 15 business days from the receipt of the written request. <u>Id</u>., ¶ 58.

After an informal resolution is attempted, and the inmate is dissatisfied with the informal resolution offered, may an inmate file what is called a "level 1 grievance." <u>56(a)(1) Statement</u>, ¶ 59. If an inmate does not receive a response to his or her CN 9601 within 15 business days he may also file a level 1 grievance and simply identify who he sent informal request to and when. <u>Id</u>., ¶ 60. To file a level 1 grievance, an inmate must use the CN9602 form and append to it the properly processed CN9601, or include an explanation for why the CN 9601 is not attached. (Exhibit A, § 9.6(6)(a)(ii)(2)). The CN 9602 and all relevant attached documents must be submitted in the "Administrative Remedies" box within 30 calendar days of the occurrence or discovery of the cause of the grievance. <u>56(a)(1) Statement</u>, ¶ 59. Upon receipt of a grievance, the unit administration must review it for compliance with sections 5 and 6 of AD 9.6, and if it is not compliant the grievance is rejected and the inmate is notified. <u>Id</u>., ¶¶ 62, 64.. The inmate is then given 5 calendar days to correct any defects, if the defects are curable, and resubmit the grievance. <u>Id</u>., ¶

64a. If the resubmitted form does not correct the defects, the request for an administrative remedy is rejected and not appealable. Id., ¶ 64b. A response to a Level 1 grievance shall be provided in writing within 30 business days of receipt of the CN 9602. Id., ¶ 63. Each Level 1 grievance that is filed is assigned an Inmate Grievance Procedure (IGP) number that is generated from the facility's Grievance Log (CN 9609). Id., ¶ 61.

Administrative Directive 9.6(6)(b)(ii) authorizes reconsideration of Level 1 dispositions. They must be filed using the Level 2 Appeal Form CN 9604 form within 5 calendar days of receiving the Level 1 decision. (Exhibit A, § 9.6(6)(b)(ii)(1)). If a timely response to the Level 1 is not received, the inmate may, instead, file the CN 9604 within 65 calendar days from the state that the initial CN 9602 was documented in the Administrative Remedies Logbook. (Exhibit A, § 9.6(6)(b)(ii)(2)). A response to a Level 2 appeal must be issued in writing within 30 business days of receipt of the CN 9604 appeal form. (Exhibit A, § 9.6(6)(b)(ii)(4)).[2]

An inmate's history of complying with all of these procedures is recorded by each facility. (Exhibit A, § 9.6(5)(o) ("Record Maintenance"). Copies of the forms filed by inmates are retained as are facility Grievance Logs which are maintained in the ordinary course of business. Id., § 9.6(5)(o)(ii). This record keeping and supervision of the logs is the responsibility of the facility's appointed Administrative

---

[2] Finally, a limited review of a level 2 appeal is also authorized by AD 9.6. (Exhibit A, § 9.6(6)(b)(iii)). These appeals are only permitted to challenge a departmental level policy, a procedure which undermines the integrity of the Administrative Remedies procedure, or when a Level 2 response is not received in the required time frame.

Remedies Coordinator ("ARC") who are familiar with the administrative directives applicable to the grievance processes. Id., § 9.6(4).

## 2. The Plaintiff Failed to Properly Exhaust His Administrative Remedies

Between April 1, 2022 and March 30, 2023, the Plaintiff filed a total of nine (9) level 1 grievances and two (2) level 2 appeals. 56(a)(1) Statement, ¶ 68. Of the nine, four, relate to the April 22, 2022, wheelchair incident and the Defendants' alleged conduct in connection therewith. Id., ¶¶ 70-73. None of the four exhausted the Plaintiff's administrative remedies however, because in each case, the Plaintiff failed to follow the procedural requirements of AD 9.6(6) before filing his level 1 grievance.[3] Accordingly, all of his federal claims are barred and summary judgment

---

[3] The Plaintiff's five other level 1 grievances are directed at other individuals and events that were either peripheral to, or wholly unrelated to, the wheelchair incident. Accordingly, they do not support exhaustion of the federal claims in the case at bar. In grievance 125-22-370, received by administration on May 5, 2022, the Plaintiff complained that Unit Manager Manik improperly removed him from his job while he was in RHU following the wheelchair incident. In grievance 125-22-392, received by administration on June 6, 2022, the Plaintiff complained he was wrongly retaliated against by Corrections Officer Casey for having complained about her friend Defendant Bell following the wheelchair incident. In grievance 125-23-061, received by administration on August 17, 2022, the Plaintiff complained that he was not provided with timely copies of five grievances that he requested in July. In grievance 125-23-148, received by administration on January 3, 2023, the Plaintiff complained that Corrections Officer Kaya committed a hate crime against him by discriminating against him in connection with his disability. In grievance 125-23-219, received by administration on February 6, 2023, the Plaintiff complained that Kitchen Supervisor Brewer refused to give him a double portion of food to which he was entitled. The grievances are also defective and fail to exhaust any administrative remedies in connection with any claims, against anyone, because the Plaintiff failed to initiate informal resolutions in each case, as required by AD 9.6, before filing the level 1 grievances. Additionally, all of the grievances filed after August 29, 2022, are precluded from consideration in connection with exhaustion of the claims at bar because exhaustion of claims must occur *prior* to the filing of a federal complaint and

should enter in favor of the Defendants.

   **a.   Level 1 Grievance #125-22-367 Did Not Properly Exhaust any of the Plaintiff's Federal Claims Against Either Defendant**

Level 1 grievance # 125-22-367, received by administration on May 4, 2022, alleges:

> I faced discrimination against my disability by Officer Bell. I have a spinal cord condition that requires medication twice a day. C/O Bell started to yell at me to lock up. I told her I need a wheelchair, <u>twice</u>! But she kept yelling and called the Lt. I am including seven witness statements, 1 doctor statement, 1 DR as evidence.

<u>56(a)(1) Statement</u>, ¶ 70.. The grievance was rejected on May 16, 2022, however, because the Plaintiff failed to show that he attempted an informal resolution with CN 9601, as required by AD 9.6. <u>Id</u>., ¶¶ 70a, 70b. This grievance did not, therefore, exhaust the Plaintiff's administrative remedies with respect to his 1st and 8th amendment federal claims against either Defendants Bell or Callender.

First, the grievance did not exhaust any claims against Defendant Callender because the grievance does not mention any wrongdoing by Defendant Callender. Although the grievance does mention that a "lieutenant" was called, and Defendant Callender does not dispute that she was that lieutenant, the Plaintiff never complains or even suggests in the grievance that Defendant Callender did anything

---

here, the Plaintiff filed his complaint (ECF 1) against the Defendants on August 29, 2022. *McLauren v. Otero*, No. 3:21CV00717 (SALM), 2022 U.S. Dist. LEXIS 135887, at *22-23 (D. Conn. Aug. 1, 2022) (citing *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001) (holding that administrative remedies must be exhausted prior to filing of initial complaint and that exhaustion during the pendency of the federal suit is insufficient)). Finally, the Plaintiff voluntarily withdrew grievance #125-23-219. Copies of the grievances are included in Defendants' Exhibit B.

wrong – he simply states that she was called by Defendant Bell. 56(a)(1) Statement, ¶ 70. Administrative Directive 9.6 requires inmates to initiate the grievance process by "clearly stat[ing] the problem and the action requested to remedy the issue" in a CN 9601. Id., ¶ 56. He did not do that here with respect any claims against Defendant Callender. AD 9.6 also requires an inmate to initiate their informal request to the DOC staff member in question or with a supervisor or manager. Id., ¶¶ 56-57. If informal resolution is unsuccessful, the inmate may then file the level 1 grievance but must include in the grievance "the name of the staff member [to] whom the informal resolution was addressed" and provide proof of that informal effort or an explanation that the CN 9601 was never returned. Id., ¶ 60. This Plaintiff did not comply with this portion of the directive either. There is no CN 9601 attached to the grievance that is directed to either Defendant, or anyone else. Nor does the Plaintiff explain why he hasn't attached a CN 9601, as required in the alternative. Because the Plaintiff failed to "*us[e] all steps* that the agency holds out, and d[o] so properly so that the agency addresses the issues on the merits" the Plaintiff has failed to exhaust any claims against Callender, as required by the PLRA, by filing this grievance. (Emphasis added.) *Woodford*, 548 U.S. at 90.

Unlike Defendant Callender, Defendant Bell is specifically identified in the May 4th grievance and the Plaintiff states what he believes her misconduct to have been. However, glaringly absent from this grievance is compliance with the provisions of AD 9.6 which require the Plaintiff to explain in the level 1 grievance the *informal resolution efforts he first took* to resolve his complaint against

Defendant Bell. (Exhibit A, ¶ 9.6(6)(a)(ii)(2)(a)). The Plaintiff could have done this by attaching to the grievance a CN 9601 that he submitted to Defendant Bell or a supervisor or manager, or by explaining in his grievance that his CN 9601 was never returned by the person to whom it was directed. *Id.* . The Plaintiff did neither of these things. Instead, he simply skipped over the informal resolution process and filed a level 1 grievance. However, the steps outlined in AD 9.6 are not optional. 56(a)(1) Statement, ¶ 55. Nor is substantial compliance or fair notice to the defendants the standard. *McCoy*, 255 F. Supp. 2d at 246. The standard under the PLRA is *proper* exhaustion and that includes compliance with every procedural step. *Jones*, 549 U.S. at 218 ("it is the prison's requirements … that define the boundaries of proper exhaustion."). Here, those steps required the Plaintiff to seek an informal resolution to his custody complaint with Defendant Bell before filing his level 1 grievance. 56(a)(1) Statement, ¶ 56. He did not do that. Summary judgment in the claims against Defendant Bell are, therefore, also warranted.

> **b.** **Level 1 Grievance #125-22-377 Did Not Properly Exhaust any of the Plaintiff's Federal Claims Against Either Defendant**

Level 1 grievance # 125-22-377, received by administration on May 13, 2022, alleges:

> It's been exactly 15 calendar days since I wrote the request attached to this grievance. This administration has a habit of not answering request slips. And I also attach a few grievance log records as evidence to that statement. All 3 wardens did tours in segregation and none stopped to speak to me about why I was placed in segregation, or to address the attached request slip I submitted on 4/25/22.

56(a)(1) Statement, ¶ 71. The CN 9601 that is attached to this grievance is dated

April 24, 2022 and does not indicate that it was ever received by anyone in administration. Nevertheless, the form, which is addressed to a warden and two deputy wardens, outlines a number of complaints against the Defendants for their alleged violation of the Plaintiff's rights on April 22, 2022, in denying him a wheelchair, sending him to RHU and issuing him a ticket because of his disability. This grievance was rejected on June 1, 2022, for noncompliance with AD 9.6. Specifically, the Plaintiff failed to simply, and coherently, articulate his requested remedy. Id., ¶¶ 71a, 71b. This rejected grievance did not, therefore, exhaust the Plaintiff's administrative remedies with respect to his 1st and 8th amendment federal claims against either Defendants Bell or Callender.

The grievance was not simply and coherently articulated as required by AD 9.6 because neither the CN 9601, request for informal remedy, nor the CN 9602, level 1 appeal, state what the Plaintiff wanted anyone to do about the alleged misconduct of Callender and Bell or the alleged misconduct of the three Cheshire Wardens. (Exhibit A, ¶ 9.6(5)(c)(ii) (request for remedy must include "action sought")). Rather, the documents only reflect a litany of complaints about multiple DOC employees and threaten (in the CN 9601) that the Plaintiff is going to go on a hunger strike "against this injustice that was done to me because of my disability." (Exhibit B, p. 20). The requirements in AD 9.6 direct that grievances be simply stated by the inmate and indicate the action sought. These requirements are not suggestions – they are mandatory under AD. 9.6. 56(a)(1) Statement, ¶ 55 ("As inmate filing a request for an administrative remedy must adhere to all procedural

requirements outlined in this directive.")). The fact that they are mandatory and were not followed, is reason alone that this rejected grievance is defective and does not exhaust the Plaintiff's administrative remedies. *Jones*, 549 U.S. at 218 ("it is the prison's requirements … that define the boundaries of proper exhaustion.").

That said, these rules are mandatory for good reason. This is not a matter of elevating form over substance. As the Supreme Court explained in *Porter v. Nussel*, the purpose of the PLRA is "to reduce the quantity and improve the quality of prisoner suits… [and to] afford[ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." (Internal quotation marks and citations omitted.) *Id.*, 534 U.S. 516, 524-25 (2002). Without simply drafted requests and grievances, that outline what inmates want from prison officials, corrections officials are deprived of meaningful opportunities to respond to inmate complaints, improve prison conditions and potentially vitiate the need for federal lawsuits. In short, AD 9.6's rules about simplicity and clarity (as compared, for example, to ensuring that written requests are free of obscene or vulgar language), go to the very heart of the PLRA and why Congress felt exhaustion was important.

Even if the documents had been somewhat more coherent and included a requested resolution, however, they would not serve as evidence of exhaustion in *this* case against *these* defendants. The documents fail to memorialize the specific steps taken by the Plaintiff to secure administrative remedies against Bell and Callender including the required informal resolution effort(s) taken directly with the Defendants (or a supervisor or manager) in writing using a CN 9601. Yet, AD 9.6 and the language directly on the level 1 grievance form (CN 9602), make clear that the inmate is responsible for following all of the procedures outlined in sections 5 and 6 of the directive, including explaining how the inmate attempted an informal resolution if the CN 9601 is not attached. 56(a)(1) Statement, ¶¶ 60, 71; (Exhibit B, p. 20). The Plaintiff did not comply with these procedures. This too is fatal to the Plaintiff's effort to pursue the federal claims at bar. *Taveras v. Semple*, No. 3:15-cv-00531 (SALM), 2023 U.S. Dist. LEXIS 1646 at *19 (D. Conn. Jan. 5, 2023) (citing *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) ("prisoners must complete the administrative review process in accordance with the applicable procedural rules -- rules that are defined not by the PLRA, but by the prison grievance process itself" (internal quotation marks omitted).

### c. Level 1 Grievances #125-22-378 & 125-23-053 Did Not Properly Exhaust any of the Plaintiff's Federal Claims Against Either Defendant

Level 1 grievance #125-22-378, received by administration on May 16, 2022, suffers from a similar infirmity as #125-22-377 in that it is not compliant with the informal resolution requirement of AD 9.6. This grievance alleges:

> I wrote to all 3 wardens about Lt. Callender's abusing her authority by placing me in solitary confinement because of my disability. It's past 15 days since I filed my complaint with no response. I would like to file some type of department charges if it's possible. I have witnesses to the entire incident.

56(a)(1) Statement, ¶ 72. Attached to the grievance is a copy of the same CN 9601 that was attached to grievance #125-22-377, and which raises multiple complaints by the Plaintiff about his treatment in connection with the wheelchair incident and then concludes with the assertion that he will be going on a hunger strike. The form does not indicate that it was ever received by anyone and contains no response.

On June 14, 2022, the level 1 grievance was denied for noncompliance with AD 9.6 which requires inmates to properly address CN 9601 forms and deposit them in the appropriate collection boxes. 56(a)(1) Statement, ¶ 72b. An administrative investigation earlier in the month concluded that the form, if it was ever sent, was not properly deposited in the correct collection box because no one in administration ever received it. Id., ¶ 72b (Exhibit B, p. 35). A level 2 appeal was authorized on June 14, 2022. Id., p. 32. On July 22, the Plaintiff's appeal was rejected but the Plaintiff was given 5 additional days to file a compliant grievance.

On August 10 2022, the administration received the plaintiff's new level 1 grievance (#125-23-053) in which the Plaintiff alleges:

> District Administrator Rodriquez told me to resubmit this level-1 grievance I wrote to all 3 wardens about Lt. Callender's abusing her authority by placing me in solitary confinement because of my disability. Its passed 15-days since I filed my complaint with no response. I would like to file departmental charges under the Americans with Disabilities Act, for discrimination and violating my state and federal civil rights.

<u>56(a)(1) statement</u>, ¶ 73.[4]  Attached to the grievance is a copy of the same CN 9601 dated April 25, 2022, addressed to the three Cheshire wardens, which the administration already determined was never received by anyone.  (Exhibit B, p. 35).  A medical entry dated April 29, 2022, is also attached, as is a document purporting to be a witness statement signed by multiple inmates.  What is not attached to the grievance, however, are documents memorializing any attempt by the Plaintiff to take advance of the additional time granted to him, to rectify his procedural noncompliance with the informal resolution requirement.  Accordingly, this grievance was rejected too.

As discussed already, informal resolution is required before an inmate may file a level 1 grievance.  After the administration rejected the Plaintiff's level 2 appeal of grievance #125-22-378, he was given five additional days to submit a level 1 grievance showing that he had properly sought an informal resolution of his complaint against "L[ieutenant] Callender's abusing her authority by placing [him] in solitary confinement because of [his] disability."  (Exhibit B, pp. 32, 44).  Yet the Plaintiff chose not to do so.  Instead, he immediately prepared a new level 1 grievance (#125-23-053,) and filed it.  The new grievance, received by administration on August 10, 2022, two days after the Plaintiff was notified he could refile, suffered from the same infirmity as grievance #125-22-378.  In failing to use the additional

---

[4] In response to his level 2 appeal of grievance #125-22-378, the Plaintiff was advised on July 22, 2022, that he was authorized to file a new level 1 grievance "if submitted within five days *of receiving* this response."  According to the Cheshire grievance distribution log, the Plaintiff received  this notification on August 8, 2022.  (Exhibit C, p. 98).  Accordingly, the August 10, 2022, level 1 filing was timely.

five days to cure the earlier defect, the Plaintiff squandered his second bite at the apple and grievance #125-23-053 was properly rejected as procedurally noncompliant. 56(a)(1) Statement, ¶ 64 (Exhibit A, § 9.6(6)(b)(i)(2)(a)(i)(2) (if resubmitted request does not cure defect, request shall be rejected)).

Of course, there are other problems with this grievance too as it relates to the Plaintiff's federal lawsuit. In his level 1 grievance, as quoted above, the Plaintiff *only* seeks to grieve Defendant Callender, and not Defendant Bell. (In fact, that is true with the level 1 grievance he filed under #125-22-378 also.). He identifies the "factual information" about which he complains as Lieutenant Callender abusing her authority by placing him in solitary confinement. By way of resolution, he states that he wants to file departmental and ADA charges against her. Quite notably, he does not identify Defendant Bell's conduct as the subject of his grievance or, more importantly, as the focus if his administrative remedy. (Exhibit A, § 9.6(3)(a) ("Administrative Remedy. The resolution of an inmate's legitimate complaint and / or request for formal review of any issue relating to an inmate's confinement that is subject to the Commissioner of Correction's authority.") But, even if the unsent / unreceived CN 9601, that is attached to the grievance, is considered in conjunction with the grievance, looking to that form only highlights additional procedural noncompliance by the Plaintiff. True, Defendant Bell's conduct is discussed in that form. The Plaintiff complains that she did not treat him fairly in issuing him a DR (disciplinary ticket). (Exhibit B, p. 45). What this form fails to do though is "clearly state the problem *and the action requested to remedy the issue*." (Emphasis added.)

(Exhibit A, § 9.6(6)(a)(i)(4)(a)).  Rather than include a request for an appropriate administrative remedy in the form, the Plaintiff threatens a hunger strike. Threatening a hunger strike in response to staff conduct that an inmate finds objectionable, is not a proper request for an informal resolution under AD 9.6. Whether grievance #125-22-053 is looked at in a vacuum or in conjunction with the flawed CN 9601, there is noncompliance with AD 9.6 across the board.  And because neither fair notice to the defendants, nor substantial compliance with DOC's administrative remedies satisfies the PLRA's exhaustion standard, rejection of the grievance was the proper outcome.  *McCoy*, 255 F. Supp. 2d at 246.  Having failed to exhaust his administrative remedies in connection with grievances #125-22-378 and #125-23-053, the Plaintiff is barred from advancing his federal 1st and 8th amendment claims against the Defendants in the lawsuit at bar.  Summary judgement in the Defendants' favor, and dismissal of the claims with prejudice, is warranted.

## V.  **CONCLUSION**

The PLRA requires exhaustion of administrative remedies.  The boundaries of exhaustion are outlined in administrative procedures drafted by prison facilities, not the PLRA or any other person or agency.  The Connecticut DOC's administrative directives applicable to the Plaintiff's federal claims, are outlined in AD 9.6 and AD 10.19.  With respect to the Plaintiff's 1st and 8th amendment claims sounding in excessive force, deliberate indifference and retaliation, the Plaintiff filed four grievances.  All were procedurally noncompliant under AD 9.6 due to noncompliance

with the informal resolution requirement.  With respect to the Plaintiff's ADA and Rehabilitation Act claims, the Plaintiff filed nothing, not even a request for a reasonable accommodation in the first place.  At every turn the Plaintiff has refused to follow well-established procedures and failed, thereby, to satisfy the requirements of the PLRA.  His federal claims are, therefore, barred and should be dismissed forthwith with prejudice.

WHEREFORE, the Defendants move this court to grant summary judgment in their favor.

DEFENDANTS
Tiffany Bell
Shawde Callender

WILLIAM TONG
ATTORNEY GENERAL

BY:*/s/ Robin S. Schwartz*
Robin S. Schwartz
Assistant Attorney General
110 Sherman Street
Hartford, CT 06105
Federal Bar #ct24891
E-Mail: robin.schwartz@ct.gov
Tel.: (860) 808-5450
Fax:  (860) 808-5591

**<u>CERTIFICATION</u>**

I hereby certify that on July 13, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.  A copy was also sent by US mail, postage pre-paid, to

> Jorge Sanchez# 156159
> Cheshire Correctional Institution
> 900 Highland Avenue
> Cheshire, CT 06410

> /s/ *Robin S. Schwartz*
> Robin S. Schwartz
> Assistant Attorney General