# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JORGE SANCHEZ, | ) | No. 3:22-CV-1087 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| OFFICER BELL, *et al.*, | ) | |
| *Defendants*. | ) | February 9, 2024 |

## RULING ON MOTION FOR SUMMARY JUDGMENT

In this civil rights action, incarcerated Plaintiff Jorge Sanchez alleges that Correction Officer Tiffany Bell and Lieutenant Shawde Callender violated his rights under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), and the First and Eighth Amendments to the United States Constitution. Defendants have moved for summary judgment, arguing that Plaintiff failed to exhaust available administrative remedies before filing suit. For the reasons that follow, the Court will grant Defendants' motion for summary judgment in its entirety.

## I.      FACTUAL BACKGROUND

The following factual background reflects the Court's review of the amended complaint,[1] the parties' Local Rule 56(a) statements of facts, and all supporting materials. *See* Am. Compl., ECF No. 16; Defs.' Local Rule ("L.R.") 56(a)1 St., ECF No. 44-2; Pl.'s L.R. 56(a)2 St., ECF No. 45 at 16–27.

---

[1] A "verified complaint . . . may be considered as an affidavit" for summary judgment purposes. *Jordan v. LaFrance*, No. 3:18-cv-1541 (MPS), 2019 WL 5064692, at *4 (D. Conn. Oct. 9, 2019) (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

All facts are undisputed unless otherwise indicated.[2]

Plaintiff has been incarcerated within the Connecticut Department of Correction ("DOC") as a sentenced prisoner since 1996. Pl.'s L.R. 56(a)1 St. ¶ 1. In April 2022, Plaintiff was housed in Cell 111 of the North Block 1 at Cheshire Correctional Institution ("Cheshire CI"). *Id.* ¶ 2. At that time, both Correction Officer Bell and Lieutenant Callender worked at Cheshire CI. *Id.* ¶¶ 11–12. Officer Bell was assigned to the North Block 1. *Id.* ¶ 11. Plaintiff was a "tierman" on North Block 1, and his job was to serve milk at designated mealtimes. *Id.* ¶ 13.

Plaintiff walks with a gait abnormality that affects his balance and walking speed. *Id.* ¶ 4. Plaintiff also occasionally experiences back spasms and takes oral medication to treat that condition. *Id.* ¶ 6. At the time relevant to this action, Plaintiff was ambulatory, although he used a DOC-issued quad-cane to provide him stability while walking. *Id.* ¶¶ 5, 8–10.

On April 22, 2022, Plaintiff was released from his cell and walked to his workstation for milk distribution. *Id.* ¶ 14. Correction Officer Bell directed him to return to his cell and lock-up. *Id.* ¶ 15. Officer Bell avers that she wanted to rotate Plaintiff's and other inmates' work times to reduce the number of workers in the common area. Defs.' Ex. I, Bell Decl. ¶¶ 7–8, ECF No. 44-11. Officer Bell contends Plaintiff refused to walk back to his cell as directed, though Plaintiff

---

[2] Defendants provided Plaintiff a notice in compliance with Local Rule of Civil Procedure 56(b) that informed him of the requirements for filing his papers in opposition to the motion for summary judgment under Local Rule 56. Notice to *Pro Se Litigant*, ECF No. 44-14. Local Rule 56(a)1 provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." Local Rule 56(a)3 provides that "each denial in an opponent's Local Rule 56(a)2 Statement[] must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial." Generally, the Court cites only to the relevant paragraph in Plaintiff's Local Rule 56(a)2 Statement where a fact is not disputed. To the extent Plaintiff's Rule 56(a)2 Statement fails to comply with requirements of Local Rule 56(a), the Court considers Defendants' facts to be admitted if supported by the evidence.

denies he refused and states he instead requested a wheelchair to go back to his cell because his spine "started to jump." Pl.'s L.R. 56(a)1 St. ¶ 16; Pl.'s Decl., ECF No. 45 at 6.

Officer Bell called for back-up to assist in removing Plaintiff from the common area, and Lieutenant Callender responded. *Id.* ¶¶ 17–18. According to Defendants, when Lieutenant Callender arrived at North Block 1, Plaintiff was seated in a large plastic chair, and Officer Bell explained that she had given Plaintiff a direct order to return to his cell but he refused to comply. *Id.* ¶¶ 20–21.[3] Defendants contend Plaintiff stated that he needed a wheelchair and asked for one to be brought to him; Plaintiff denies this in his Local Rule statement, but elsewhere in his filings does not deny that he requested wheelchair transport. *Id.* ¶ 21; *but see* Pl.'s Decl., ECF No. 45 at 6. Lieutenant Callender called for a wheelchair to be brought to Plaintiff in North Block 1. Pl.'s L.R. 56(a)1 St. ¶ 22. Plaintiff was later taken by wheelchair to the Restricted Housing Unit ("RHU") in connection with disciplinary charges for flagrant disobedience toward Officer Bell. *Id.* ¶ 23.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

---

[3] While Plaintiff denies these facts, he has not pointed the Court to any evidence, much less admissible evidence, supporting his denial. As explained in footnote 3, the Court deems Defendants' facts admissible, where they are supported by evidence in the record and have not been appropriately refuted by Plaintiff.

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial. It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324). The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson*, 477 U.S. at 249. If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923

F.2d 979, 982 (2d Cir. 1991).

Moreover, the Court bears in mind that a *pro se* litigant's filings must be liberally construed to raise the strongest arguments they suggest.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (collecting cases regarding the "special solicitude" afforded to *pro se* litigants).

### III.   DISCUSSION

For the reasons discussed below, the Court grants Defendants' motion for summary judgment as to all claims.  The Court holds that Plaintiff did not exhaust available administrative remedies as to any of his claims, and there are no genuine issues of material fact as to whether the Court should excuse his failure to exhaust.[4]

### A.   Prison Litigation Reform Act ("PLRA")

The PLRA mandates that incarcerated plaintiffs exhaust all administrative remedies available to them before filing a complaint in federal court under 42 U.S.C. § 1983.  42 U.S.C. § 1997e(a).  The PLRA requires "proper exhaustion," meaning that plaintiffs must exhaust all available remedies in "compliance with an agency's deadlines and other critical procedural rules."  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).   The requirement of exhaustion of administrative remedies serves "two main purposes."  *Id.* at 89.   First, exhaustion gives an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's

---

[4] On August 7, 2023, Plaintiff filed an opposition to Defendants' reply, which the Court construes as a sur-reply. Pl.'s Sur-Reply, ECF No. 47.  Although the Court does not generally accept sur-reply briefs, the Court will not strike this brief because Defendants have not objected to its being considered, and because Plaintiff is a self-represented incarcerated litigant.

procedures." *Id.* (cleaned up) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1995)).

Second, exhaustion promotes efficiency because "[c]laims can be resolved much more quickly

and economically in proceedings before an agency than in litigation in federal court." *Woodford*,

584 U.S. at 89.

To properly exhaust a claim, "a prisoner must allege facts sufficient to alert corrections

officials to the nature of the claim, and provide enough information about the conduct at issue to

allow prison officials to take appropriate responsive measures." *Singh v. Lynch*, 460 F. App'x

45, 47 (2d Cir. 2012) (summary order) (cleaned up) (quoting *Johnson v. Testman*, 380 F.3d 691,

697 (2d Cir. 2004)).   If a plaintiff does not provide such description or notice, correctional

officials are not afforded the "opportunity to address complaints internally," which Congress has

required before a plaintiff can pursue a federal case. *Porter v. Nussle*, 534 U.S. 516, 525 (2002).

As the United States Supreme Court explained in *Woodford*:

> Because exhaustion requirements are designed to deal with parties who do
> not want to exhaust, administrative law creates an incentive for these
> parties to do what they would otherwise prefer not to do, namely, to give
> the agency a fair and full opportunity to adjudicate their claims.
> Administrative law does this by requiring proper exhaustion of
> administrative remedies, which means using all steps that the agency holds
> out, and doing so *properly* (so that the agency addresses the issues on the
> merits).

548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.) *cert. denied* 537

U.S. 949 (2002)) (cleaned up) (emphasis in original).

The exhaustion requirement may be excused in limited circumstances, when the

administrative remedy is not available in practice even if it is "officially on the books." *See Ross

v. Blake*, 578 U.S. 632, 642–43 (2016).   An inmate is required to "to exhaust those, but only

6

those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). The Supreme Court has established three circumstances where an administrative procedure is considered unavailable: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when a procedure is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44. "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

Because failure to exhaust administrative remedies is an affirmative defense, the defendant bears the burden of proving that the plaintiff did not exhaust his administrative remedies. *See Jones*, 549 U.S. 199, 216 (2007); *Burton v. Salerno*, No. 3:20-cv-1926 (VAB), 2023 WL 184238, at *6 (D. Conn. Jan. 13, 2023); *Sease v. Phillips*, No. 06 Civ. 3663 (PKC), 2008 WL 2901966, at *4 (S.D.N.Y. July 24, 2008). Once this burden is met, the plaintiff must show that he did exhaust his administrative remedies or that the administrative remedy is not available in practice. *See Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013) (citing *Murray v. Palmer*, No. 9:03-CV-1010 (GTS/GHL), 2010 WL 1235591, at *4 (N.D.N.Y. Mar. 31, 2010)).

Here, the Court permitted Defendants to file an early summary motion on the issue of exhaustion. ECF No. 34.

B. <u>First and Eighth Amendment Claims</u>

For the reasons discussed below, the Court grants Defendants' motion for summary judgment on exhaustion grounds as to Plaintiff's constitutional claims.

At the initial review stage, the Court ruled that Plaintiff could proceed on the following constitutional claims:  (1) an Eighth Amendment claim against Officer Bell for her deliberate indifference to his need for a wheelchair in violation of the Eighth Amendment; (2) an Eighth Amendment claim against Lieutenant Callender for her alleged use of excessive force in violation of the Eighth Amendment, when she ordered Plaintiff to be placed in the RHU after he requested a wheelchair; and (3) First Amendment claims against Officer Bell and Lieutenant Callender for retaliating against him after requesting a wheelchair.  ECF No. 18 at 5–7.

The Court will first discuss the relevant DOC Administrative Directive describing the grievance exhaustion framework for these claims, before turning to an analysis of Plaintiff's relevant grievances.

### 1. *Administrative Directive 9.6*

For inmates housed in Connecticut state correctional facilities, the DOC's Administrative Directives provide the specific requirements an inmate must follow prior to filing a lawsuit in federal court.

Claims related to conditions of confinement and retaliation by correctional staff are subject to the inmate grievance procedure set forth in Administrative Directive 9.6(6) (revised April 30, 2021).[5]  *See Cosme v. Faucher*, No. 3:21-CV-1341 (SVN), 2022 WL 16540861, at *3 (D. Conn. Oct. 28, 2022).

---

[5] Defendants' Exhibit A, ECF No. 44-3, is the relevant version of Administrative Directive 9.6 that became effective on April 30, 2021.

Under the procedures in place during the timeframe relevant to Plaintiff's claims, an inmate was required to first attempt to resolve the matter informally. Specifically, an inmate could attempt to verbally resolve the issue with an appropriate staff member or supervisor. *See* A.D. 9.6(6)(a)(i)(1)–(2). If the attempts to resolve the matter verbally were ineffective, then the inmate could make a written request for informal resolution by sending a CN 9601 Inmate Request Form to the appropriate staff member. A.D. 9.6(6)(a)(i)(3). The written form had to "clearly state the problem and the action requested to remedy the issue." A.D. 9.6(6)(a)(i)(4)(a). Correctional staff were then required to respond to a written request form within fifteen business days of receipt. A.D. 9.6(6)(a)(i)(8).

If an inmate did not receive a response to the written request within fifteen business days, or if the inmate was not satisfied with the response to his request, the inmate could then file a Level 1 grievance. A.D. 9.6(6)(a)(ii)(1)–(2). The Level 1 grievance had to be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance, and inmates were directed to include with the grievance a copy of the response to the inmate's written request to resolve the matter informally or an explanation for why the response was not attached. A.D. 9.6(6)(a)(ii)(2)–(4). The Level 1 grievance also had to "include the name of the staff member [to] whom the informal resolution was addressed and the date of the attempt." A.D. 9.6(6)(a)(ii)(2)(a). The Unit Administrator would then respond in writing to the Level 1 grievance within thirty business days of his or her receipt of the grievance. A.D. 9.6(6)(b)(i)(3).

The grievance could then be returned without disposition, rejected (if the administrative remedy failed to satisfy the procedural requirements of the requested remedy), denied, compromised, upheld, or withdrawn. A.D. 9.6(5)(n)(i)–(ii); A.D. 9.6(6)(b)(i)(2); *see also* A.D.

9.6(3)(h).  If an administrative remedy was rejected, then the inmate would have five calendar days to correct the defect and resubmit the administrative remedy request.  A.D. 9.6(6)(b)(i)(2)(a)(i)(1).  But if the resubmitted request for administrative remedy did not correct the defect, then the administrative remedy request would be rejected and not subject to further appeal.  A.D. 9.6(6)(b)(i)(2)(a)(i)(2).

The procedures further provided that the inmate could appeal the Unit Administrator's disposition of the Level 1 grievance, or the Unit Administrator's failure to dispose of the grievance in a timely manner, through a Level 2 grievance.  *See* A.D. 9.6(6)(b)(ii).  An inmate seeking to appeal a Level 1 grievance was required to file the Level 2 appeal within five calendar days of the inmate's receipt of the decision on the Level 1 grievance.  *See* A.D. 9.6(6)(b)(ii)(1).  An inmate seeking to appeal the Unit Administrator's failure to dispose of the Level 1 grievance in a timely manner was required to do so within sixty-five days of the date the Level 1 grievance was filed by the inmate.  A.D. 9.6(6)(b)(ii)(2).  Level 2 appeals of inmates confined in Connecticut correctional facilities were reviewed by the appropriate District Administrator.  A.D. 9.6(6)(b)(ii)(3)(a).  The District Administrator would respond to the Level 2 appeal within thirty business days of receipt of the appeal.  A.D. 9.6(6)(b)(ii)(4).

Level 3 appeals were restricted to challenges to department policy, challenges to the integrity of the grievance procedure, and Level 2 appeals to which there had been no timely response by the District Administrator.  *See* A.D. 9.6(6)(b)(iii)(1).  A Level 3 appeal was required to be filed within five calendar days from the inmate's receipt of the decision on the Level 2 appeal.  *See* A.D. 9.6(6)(b)(iii)(2).  A Level 3 appeal of the District Administrator's failure to dispose of the Level 2 appeal in a timely manner was required to be filed within sixty-

10

five calendar days of the filing of the Level 2 appeal.  *See* 9.6(6)(b)(iii)(2)(a).  Level 3 appeals were reviewed by the Commissioner of the Department of Correction or his designee.  *See* A.D. 9.6(6)(b)(iii)(3).

### 2.  *Plaintiff's Administrative Remedies*

For the reasons discussed below, the Court finds that Plaintiff did not exhaust his available administrative remedies related to his First and Eighth Amendment claims, and that Plaintiff should not be excused for his failure to exhaust.

In support of their motion for summary judgment, Defendants have submitted the declaration of Correctional Counselor Carlos Arvelo, who is the Administrative Remedies coordinator ("ARC") for Cheshire CI.  Defs.' Ex. K, ECF No. 44-13 ¶ 4; *see also* Pl.'s L.R. 56(a)2 St. ¶ 51.  He is the keeper of records for inmate administrative remedies, grievances, and appeals, and maintains the institution's Grievance Log.  *Id.*  ARC Arvelo conducted a search for Plaintiff's grievance filings at Cheshire CI between April 1, 2022, and March of 2023.  ECF No. 44-13 ¶ 15.  ARC Arvelo declares that his review showed that Plaintiff filed nine Level 1 Grievances and two Level 2 Grievance Appeals between April 1, 2022, and March 30, 2023.  *Id.* ¶ 16.  Upon review of the record, the Court concludes that Plaintiff filed the following grievances relevant to this action, none of which exhausted the administrative remedies available to him.

### a.  Grievance #125-22-367

First, the Court Finds that Plaintiff did not fully exhaust Grievance #125-22-367, filed on May 4, 2022.  Pl.'s L.R. 56(a)2 St. ¶ 70.  In this Level 1 Grievance, Plaintiff asserted that Officer Bell discriminated against Plaintiff by yelling at him to lock-up and not providing him with a wheelchair.  *Id.*; Defs.' Ex. B (Grievances), ECF No. 44-4 at 2–3.  On May 16, 2022, this Level

1 Grievance was rejected because Plaintiff had failed to comply with the procedural requirements to (1) first pursue an informal resolution as required by A.D. 9.6(6)(a); and (2) to state his request and administrative remedy sought simply and coherently as required by A.D. 9.6(5)(c)(ii).  ECF No. 44-3 at 3.

As an initial matter, the failure to mention Lieutenant Callender in this grievance precludes it from exhausting any claims against Lieutenant Callender.  While Plaintiff need not specifically articulate his claims in his grievances in the exact manner as his claims in federal court, his grievances must provide notice to the prison officials as to the factual basis of his claims.  *See Espinal v. Goord*, 558 F.3d 119, 127–28 (2d Cir. 2009) (requiring inmate grievances to adequately describe the alleged misconduct).  Although the PLRA imposes no requirement for an inmate to name all defendants in the grievance, *see Jones*, 549 U.S. at 217–18, and the DOC's Administrative Directives do not require this level of specificity, Grievance #125-22-367 affords no notice to DOC of any complaint about Lieutenant Callender's conduct, such that it could address the complaint administratively.  Therefore, Grievance #125-22-367 does not exhaust administrative remedies against Lieutenant Callender.

As to Officer Bell, the Court likewise cannot find that Plaintiff exhausted available administrative remedies.  Under A.D. 9.6, an inmate must attempt to informally resolve an issue, either verbally or in writing through a CN 9601 form, and any Level 1 grievance must attach the CN 9601 form or explain why it was not attached, with the name of the staff member with whom informal resolution was attempted and the date of the attempt.  *See* A.D. 9.6(6)(a)(ii)(1)–(3).  Plaintiff does not dispute that he did not submit a CN 9601 form, and Grievance #125-22-367 makes no mention of an attempt at verbal informal resolution.  While Plaintiff contends in his

opposition that he satisfied the informal resolution requirement by answering Lieutenant Callender's question about what happened, ECF No. 45 at 6, it is undisputed that Plaintiff's Level 1 grievance neither explains this attempt nor attaches a CN 9601 form.  Indeed, as noted above, it makes no mention of Lieutenant Callender at all.  As explained, "proper exhaustion of administrative remedies means using all steps that the agency holds out, and doing so *properly* so that the agency can address the issues on the merits, in the first instance."  *Woodford*, 548 U.S. at 90 (cleaned up) (emphasis in original) (quoting *Pozo*, 286 F.3d at 1024).  Accordingly, it is beyond dispute that Plaintiff's Level 1 Grievance fails to comply with the procedural requirements set forth under Directive 9.6(6)(a)(ii), and therefore did not exhaust administrative remedies relevant to Plaintiff's Eighth or First Amendment claims against either Officer Bell or Lieutenant Callender.

b.  Grievances #125-22-377, #125-22-378, and #125-22-053

Beginning on May 4, 2022, Plaintiff filed a series of Level 1 grievances that were rejected for various reasons.  The Court finds that these grievances, too, failed to fully exhaust administrative remedies.

On May 13, 2022, Plaintiff filed a Level 1 Grievance (#125-22-377).  Defs.' Ex. B at 19. Plaintiff stated:

> It's been exactly 15-calendar days since I wrote the request attached to this grievance.  This administration has a habit of not answering request slips.  And I'll also attach a few grievance log records as evidence to that statement.  All 3-wardens did tours in segregation and none stoped [sic] to speak to me about why I was placed in segregation, or to address the attach [sic] request slip I submitted on 4/25/2022.

*Id.*  Plaintiff attached an inmate request form (CN 9601) dated April 25, 2022, addressed to Warden Reis, Deputy Warden Nunez, and Deputy Warden Pierce that stated as follows:

> I was placed in seg because I asked for a wheelchair to assist me when c/o Bell told me to lock up.  I told LT. Callender also that I needed a wheelchair.    But she just put [me] in segregation[.]    [T]his is discrimination and deliberate indifference on LT. Callender and c/o Bell because everybody herd [sic] me ask for a wheelchair.  I was placed in segregation because of my disability and the way c/o Bell wrote the D.R. she made it seem like I did something wrong.  This isn't Right, All I did was ask for a wheelchair.

> I will be going on a hunger strike until I'm released from Seg, my hunger strike will be a protect against this injustice that was done to me because of my disability.

*Id.* at 20.  This inmate request form was blank in the section requiring a DOC's staff member's "action taken and/or response."  *Id.*

On June 1, 2022, this Level 1 Grievance was rejected because "the request for an administrative remedy and action sought should be stated simply and coherently[.]"  *Id.* at 19; *see* A.D. 9.6(5)I(ii).

On May 16, 2022, Plaintiff filed a Level 1 Grievance (#125-22-378) stating:

> I wrote to all 3-wardens about LT. Callender's abusing her authority but [sic] placing me in solitary confinement because of my disability.  It's pass [sic] 15-days since I filed my complaint with no response.  I would like to file some type of departmental charges if it's possible.  I have witnesses to the entire incident.

Defs.' Ex. B at 32.  He attached the same inmate request form (CN 9601) that he had attached to his prior Level 1 Grievance (#125-22-377), which was blank in the DOC staff action/response space.  *Compare* Defs.' Ex. B at 34 *with id.* at 20.

On June 14, 2022, Warden Reis denied Level 1 Grievance #125-22-378 because "it was determined that an inmate request form pertaining to [Plaintiff's] placement in RHU, was not received by the administration[.]"  *Id.* at 32.  She advised him that Directive 9.6 required him to address his Inmate Request Form to the appropriate staff member and deposit it in the

appropriate collection box.  *Id.*  Her grievance response also indicated that he had five days to appeal this denial.  *Id.*

Plaintiff timely filed his Level 2 Grievance appeal on June 16, 2022.  *Id.* at 31.  On July 22, 2022, the Level 2 Grievance Review denied Plaintiff's appeal as follows:

> You are appealing a level one grievance 125-22-378 regarding staff conduct (LT Callender) at Cheshire C.I.  The facility denied your grievance, however, utilized a disposition which is reserved for rejection due to no informal resolution.  When utilized, the grievance would be given 5 days to refile as a new grievance and not subject to a level 2 review.  To remedy this issue, you will be allowed to resubmit a level 1 grievance regarding your original complaint, it will be accepted as timely if submitted within 5 days of receiving this response.  Your level 2 grievance appeal is denied.

*Id.*

Seemingly in response to denial of the Level 2 Grievance appeal, Plaintiff filed a new Level 1 Grievance (#125-23-053) dated August 8, 2022, that was received on August 10, 2022. Defs.' Ex. B at 43–44.  It stated:

> District Administrator Rodriguez told me to resubmit this level-1 grievance, I wrote to all 3-wardens about LT. Callender's abusing her authority by placing me in solitary confinement because of my disability. It's passed 15-days since I filed my complaint with no response.  I would like to file departmental charges under the Americans with [D]isabilities Act for discrimination and violating my <u>state</u> and <u>federal</u> civil rights.

Defs.' Ex. B at 44 (emphasis in original).  Plaintiff also attached the same procedurally-defective inmate request (CN 9601) that he had previously attached to his Level 1 Grievances ##125-22-377 and 125-22-378.  *Id.* at 45.

On August 24, 2022, Warden Reis rejected his Level 1 Grievance for the following reasons:

> The request for administrative remedy fails to satisfy the procedural requirements[.]  In accordance with AD 9.6, an inmate must attempt to

15

seek informal resolution prior to filing grievance. The inmate may attempt to resolve the issue verbally with the appropriate staff member or with a supervisor/manager. *If the verbal communication does not resolve this issue, the inmate shall submit a written request via CN 9601, Inmate Request Form.*

*Id.* at 44 (emphasis in original). Plaintiff did not appeal this rejection.

The Court finds that Grievances #125-22-377, #125-22-378, and #125-22-053 did not fully exhaust his remedies for his Eighth and First Amendment claims against Officer Bell and Lieutenant Callender. Grievance #125-22-377 was properly denied for failure to clearly state his requested relief. This grievance did not adequately describe the relief Plaintiff sought from prison officials in response to the conduct described in the grievance. Plaintiff's subsequent grievances were properly denied for failure to attach a CN 9601 form with a response from the appropriate staff member. Each time Plaintiff submitted a new grievance, he attached the same defective CN 9601. It was incumbent upon Plaintiff to properly fill out the CN 9601 form. Plaintiff's failure to do so rendered his claims unexhausted.[6]

### 3. Excusal from Exhaustion

Having determined that Plaintiff has not actually exhausted the administrative remedies available to him, the Court considers whether there is a legal basis to excuse Plaintiff from this requirement. The exhaustion requirement is excused in three circumstances: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when a

---

[6] In addition, it appears that the last of the grievances, #125-23-053, was not timely filed. When Plaintiff's previous Level 2 grievance appeal was denied on July 22, 2022, it advised Plaintiff that he could "resubmit a level 1 grievance regarding [his] original complaint," and it would "be accepted as timely if submitted within 5 days of receiving this response." Defs.' Ex. B at 31. In response, Plaintiff filed a new Level 1 grievance, but not until August 8, 2022. While the record does not reflect when Plaintiff received the Level 2 appeal rejection decision, he has put forward no evidence suggesting that he did not receive it on July 22, when it was decided, or any time between July 22 and August 3 (five days before he re-filed the Level 1 grievance). Nonetheless, Warden Reis still considered the possibly untimely grievance on its merits.

procedure is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44.

Construing all inferences of fact most favorably to Plaintiff as the non-moving party, the Court nonetheless concludes that there are no genuine issues of material fact suggesting  that Plaintiff should be excused from the exhaustion requirement.

Warden Reis rejected Grievance #125-22-377 on May 13, 2022, as not stated simply and coherently.  *Id.* at 19.  On review, the Court finds that while the grievance clearly complained about the failure of prison staff to address his attached inmate request about Defendants' conduct, this grievance still fails to adequately state any requested relief.  *Id.* at 19–20.  Even drawing all inferences in Plaintiff's favor, the Court finds that Warden Reis properly rejected Grievance #125-22-377 because, without clearly-stated relief, Warden Reis could not act on Plaintiff's grievance.  Thus, the disposition of this grievance does not support the inference in Plaintiff's favor that the process "operate[d] as a simple dead end."  *Cf. Wright v. Snyder*, No. 3:21-CV-104 (SVN), 2023 WL 6379451, at *7, (D. Conn. Sept. 30, 2023) (finding that "a simple dead end" may occur where grievances are repeatedly returned "without disposition" by the same prison officials).

Warden Reis also acted properly in denying Plaintiff's other grievances.  First, the warden denied Grievance #125-22-378 for failure to comply with the informal resolution requirement—i.e., by attaching a properly-completed CN 9601 containing the appropriate staff member's response to Plaintiff's complaint.  ECF No. 44-4 at 32.  The warden then rejected Plaintiff's Level 1 Grievance #125-23-053 on August 24, 2022, for failure to comply with the

informal resolution requirement because Plaintiff attached the same exact defective CN 9601 that the warden had already warned Plaintiff not to use. *Id.* at 44–45. That Warden Reis initially rejected Plaintiff's grievances for failure to state the particular relief requested and then two additional times on procedural grounds does not support the inference that the grievance process acted as a dead-end. Rather, even construing the record in the light most favorable to Plaintiff, Plaintiff's Level 1 Grievances were properly denied.

Plaintiff has not argued that either of the latter two *Ross* exceptions to the exhaustion requirement apply here, and the Court finds that they do not: the grievance process is not so opaque that it is effectively unusable, *see Riles v. Buchanan*, 656 Fed. App'x. 577, 581 (2d Cir. 2016) (summary order) (recognizing that while A.D. 9.6 is "rigorous," is it "not so opaque as to be unavailable"), and there is no evidence that prison officials tried to thwart Plaintiff's attempts to exhaust. Indeed, in giving Plaintiff an opportunity to resubmit his Level 1 grievance after his Level 2 appeal was denied, prison officials kept an avenue of complaint open for Plaintiff. That Plaintiff did not pursue that avenue through full exhaustion falls on his shoulders.

Thus, the Court grants Defendants' motion for summary judgment as to Plaintiff's First and Eighth Amendment claims against Officer Bell and Lieutenant Callender.

### C. ADA and RA Claims

The Court permitted Plaintiff to proceed on his claims for damages for violation his rights under the ADA and RA (1) against Officer Bell in her official capacity for failing to provide him with a wheelchair on April 22, 2022, and (2) against Lieutenant Callender in her official capacity for retaliating against him for requesting a wheelchair. ECF No. 18 at 2–4. The Court finds that

Plaintiff has not exhausted his ADA and RA claims and that Plaintiff should not be excused from this requirement.

### 1. DOC Wheelchair Policy and Administrative Directive 10.19

DOC has two standards for authorizing inmate wheelchair use.  Pl.'s L.R. 56(a)2 St. ¶ 40.  An inmate who is not ambulatory may have a wheelchair assigned on a full-time basis to be retained in the inmate's cell.  *Id.*  An inmate who is generally ambulatory but requires the periodic assistance of a wheelchair—for instance, an inmate who is unable to safely or effectively ambulate longer distances on his or her own—may have a wheelchair assigned to the unit so that the chair is available when the inmate requires it.  *Id.* ¶ 41.  But this wheelchair is not retained by, or assigned to, that particular inmate.  *Id.*  The DOC Health Services Department does not procure or provide wheelchairs to inmates for periodic use.  *Id.* ¶ 42.  And any inmate who requires a wheelchair on a periodic basis must follow the procedures outlined in DOC Administrative Directive 10.19.  *Id.*

DOC Administrative Directive 10.19[7] ensures that any qualified inmate with a disability shall not be excluded from participating in, or denied the benefits of services, programs or activities provided by DOC.  *Id.* ¶ 28.  The procedures outlined in A.D. 10.19 are mandatory for inmates who wish to assert a qualifying disability and seek a reasonable accommodation in connection therewith.  A.D. 10.19(8)(a); *id.* at 10.19(17).  A.D. 10.19 requires an inmate to request a reasonable accommodation for his or her mental or physical disability by submitting a

---

[7] A.D. 10.19 (effective 9/24/2021) is attached to Defendants' motion for summary judgment as Exhibit D, ECF No. 44-6.

CN 101902 form to the inmate's local unit ADA coordinator.  A.D. 10.19(8)(a).[8]  The request

must be logged, and a review process must be initiated within five days.  A.D. 10.19(8)(b)(i).

A.D. 10.19(8) provides that "[a]ppropriate reasonable accommodations may differ depending on

the ability of the inmate and the nature of the program or activity in question."

 In processing the reasonable accommodation request, the unit ADA coordinator must

coordinate with the Health Services Department to review, assess, and verify the asserted

impairment and the need for a reasonable accommodation.  A.D. 10.19(8)(b).  All

recommendations for reasonable accommodation are reviewed for potential impacts on safety

and security.  A.D. 10.19(8)(b).  After an accommodation is approved, the local unit ADA

coordinator documents the accommodation plan and makes it available to unit and program staff.

A.D. 10.19(8)(c)–(d).  If a reasonable accommodation request is denied pursuant to Directive

10.19, the local unit ADA coordinator must notify the inmate in writing and advise the inmate of

his or her right to appeal the decision under Directive 9.6(7)(a)(8).  A.D. 10.19(8)(b)(ii); *see also*

Gallagher Decl. ¶¶ 14–15, Defs.' Ex. H, ECF No. 44-10.  Under Directive 9.6(7), an inmate must

submit a properly filled out CN 9606, Appeal of Administrative Decision form, within 15

calendar days of receiving notice of the denial of his or her requested reasonable

accommodation.  *See* A.D. 9.6(7)(a)(iii).

---

[8] A.D. 10.19(3)(d) defines disability as "[a] physical or mental impairment that substantially limits one or more major life activities; record or history of such impairment; or being perceived or regarded as having such impairment."

### 2. Discussion

Defendants have demonstrated, as a matter of law, that Plaintiff did not exhaust available administrative remedies with respect to his requests for a wheelchair as an accommodation for an alleged disability.

First, it is undisputed that Plaintiff has never been assigned a wheelchair through the prison's health services. At no time before April 22, 2022, had the Health Services Department issued a wheelchair for Plaintiff for a medical need. Pl.'s L.R. 56(a)2 St. ¶ 24. Nor had Plaintiff been assigned the use of a wheelchair on either a full or part-time basis by the Health Services Department, the ADA Coordinator, or the Disability Rights Coordinator. *Id.* ¶ 25. Since April 22, 2022, Plaintiff likewise has not been approved for a part time or wheelchair accommodation. *Id.* ¶ 49.

The record before the Court demonstrates that Plaintiff has never sought a wheelchair accommodation, either. DOC Disability Rights Coordinator Gallagher is responsible for maintaining the reasonable accommodation request log, which is kept in the ordinary course of business. *Id.* ¶¶ 26, 32; *see also* A.D. 10.19(5)(h). Gallagher declares that, since at least November of 2016, there is no record in the log of Plaintiff submitting a CN 101902 form to request a reasonable accommodation for anything, including access to a wheelchair on either a full-time or part-time basis. ECF No. 44-10 ¶ 30. Further, there is no record of Plaintiff

submitting a CN 9606 form to appeal a denial of his request for a reasonable accommodation under Directive 9.6(7)(a) between April 1, 2022, and March 30, 2023.  ECF No. 44-13 ¶ 27.[9]

Although Plaintiff denies in his Local Rule statement that he never requested a wheelchair as a reasonable accommodation, *see* Pl.'s L.R. 56(a)2 St. ¶ 43, he admits in his opposition brief that he has never requested one; he says he has no need for a wheelchair "because everything is brought to the unit."  ECF No. 45 at 4–5.  Given Plaintiff's admission that he never submitted a CN 101902 for use of a wheelchair—even temporarily when he experiences back spasms—it is clear Plaintiff did not properly "us[e] all steps" of the available administrative remedies so that DOC could address the merits of his request.  *See Woodford*, 548 U.S. at 90.

Plaintiff appears to be requesting that the Court treat his requests to Officer Bell and Lieutenant Callender on April 22, 2022, that he be given a wheelchair to return to his cell as his request for accommodation.  But Plaintiff does not dispute that the health services department does not procure or provide wheelchairs for periodic use; rather, an inmate who requires a wheelchair periodically must follow the procedures outlined in A.D. 10.19 to receive one.  Pl.'s L.R. 56(a)2 St. ¶ 42.  As it is undisputed that Plaintiff never engaged in those procedures, he cannot claim that he made an appropriate request.

Thus, there is no dispute that Plaintiff has failed to exhaust his ADA and RA claims against Officer Bell and Lieutenant Callender.  Nor does Plaintiff adduce any evidence to suggest that should be excused from exhausting administrative remedies for his ADA and RA

---

[9] Gallagher averred that the statewide accommodation log showed no CN 101902 submitted by Plaintiff for any condition since 2016.  ECF No. 44-10 ¶ 43.  But Plaintiff has submitted a copy of his CN 101902 submitted to an ADA Coordinator in January 2018 for a special mattress and egg crate for his lower back.  Pl.'s Ex. O, ECF No. 45 at 85.  While the January 2018 CN 101902 casts doubt on the completeness of Gallagher's search, it does not raise an issue of material fact related to the wheelchair incident on April 22, 2022, because Plaintiff admits that he never submitted a CN 101902 request for a wheelchair.  *See* ECF No. 45 at 4–5.

claims, as contemplated by *Ross*.   Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's ADA and RA claims on exhaustion grounds.

## IV.    CONCLUSION

For the reasons discussed herein, Defendants' motion for summary judgment is GRANTED in its entirety.  The Clerk is directed to enter judgment for Defendants and close this case.

**SO ORDERED** at Hartford, Connecticut, this 9th day of February, 2024.

 */s/ Sarala V. Nagala*              
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE